**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

ANTHONY CALVI,

§
§
§
§
§
§
§
§
§
§
§
§

Plaintiff,

v.

KELLER NORTH AMERICA INC.,

Defendant.

Civil Action No. 1:24cv23542

---

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, Anthony Calvi ("Plaintiff"), by and through undersigned counsel, and pursuant to the Uniformed Services Employment and Re-employment Act ("USERRA"), 38 U.S.C. § 4301, *et seq*., sues the Defendant, Keller North America, Inc. (hereinafter referred to as "Defendant" or "Keller North America"). In support thereof, Plaintiff alleges as follows:

### I.    <u>JURISDICTION AND VENUE</u>

1.    The jurisdiction of this Court is founded on federal question jurisdiction, 28 U.S.C. § 1331, as conferred by 28 U.S.C. § 4323(b)(3).

2.    Venue is proper in the Southern District of Florida pursuant to 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b)(2) as Defendant maintained a place of business in the Southern District, State of Florida, and Plaintiff was formerly employed by Defendant, prior to wrongful termination, at that Florida place of business.

3.    Pursuant to 38 U.S.C. § 4323(h), "[n]o fees or court costs may be charged or taxed against any person claiming rights under [USERRA]."

4.      Plaintiff seeks all relief under USERRA, including lost wages, benefits, as well as liquidated damages for Defendant's willful violation of USERRA.

## II.      PARTIES

5.      Plaintiff Anthony Calvi is a citizen of the United States over the age of the majority and a resident of the State of Florida. At all relevant times hereto, Plaintiff was an employee as defined under 38 U.S.C. § 4303(3).

6.      Defendant Keller North America, Inc. is a foreign Delaware corporation licensed and authorized to conduct business in the State of Florida. Defendant maintains a substantial connection with, and has purposefully directed significant activities at, the State of Florida. Such activities include operating a branch location, where Plaintiff was employed, at 8275 NW 80th St, Miami, FL 33166 (the "Office"). Defendant is an "employer" subject to suit under USERRA as defined under 38 U.S.C. § 4303(4).

7.      At all times relevant hereto, Plaintiff was a member of the United States Army. Furthermore, at all relevant times hereto, Defendant was aware that Plaintiff was a member of the United States Army.

## GENERAL ALLEGATIONS

### A.   At All Relevant Times, Plaintiff was a Highly Commended and Distinguished Veteran of the United States Armed Forces.

8.      Plaintiff was honorably discharged from active duty on March 10, 2023.[1] Throughout his active service, Plaintiff conducted military operations over several deployments abroad in the following countries: Germany (twice), Poland (Twice), Latvia, and Ukraine.

---

[1] Plaintiff's End of Service ("EOS") date is March 6, 2023.

9.     As a member of the United States Army, at the time Plaintiff was honorably discharged he had received the following decorations, medals, badges, citations, and campaign ribbons:

    a.   Meritorious Service Medal;

    b.   Joint Service Commendation Medal;

    c.   Army Commendation Medal (9th Award);

    d.   Army Achievement Medal;

    e.   Army Good Conduct Medal;

    f.   Army Reserve Component Achievement Medal (3rd Award);

    g.   National Defense Service Medal;

    h.   Global War on Terrorism Expeditionary (3rd Award);

    i.   Global War on Terrorism Service Medal;

    j.   Armed Forces Service Medal;

    k.   Humanitarian Service Medal;

    l.   Iraq Campaign Medal (W/5 Campaign Stars);

    m.   Non-Commissioned Officer Professional Deployment Ribbon;

    n.   Army Service Ribbon;

    o.   Overseas Service Ribbon;

    p.   Army Reserve Component Overseas Training Ribbon (3rd Award);

    q.   Armed Forces Reserved Medal With "M" Device and 10 Year Bronze Hourglass, awarded for 10 years or more service; and

    r.   Military Outstanding Volunteer Service Medal.

10.     At the time of discharge, Plaintiff's rank was First Seargent, which is both a senior and leadership role within the Army. Prior to this designation of rank, Plaintiff served as an Infantry Senior Sergeant for one (1) year and four (4) months.

**B. Following Plaintiff's Disclosure of his Military Obligations, He Was Treated Disparately as Compared to Other Similarly Situated Employees.**

11.     Plaintiff was originally hired by HJ Foundation, Inc. in 2012. Keller Group PLC (the "Parent Company") acquired HJ Foundation, Inc. in 2007. HJ Foundations, Inc. was subsequently renamed to Keller North America, Inc. by the Parent Company in 2020.

12.     Following this rebranding, accompanied by a subsequent layoff of several employees, an individual named Andres Baquerizo was appointed as Branch Manager of the office. As a result of such appointment, Mr. Baquerizo became Plaintiff's immediate supervisor.

13.     In or around July of 2020, following Mr. Baquerizo's appointment, Plaintiff provided his 2020-2021 Army drill/training schedule, thereby giving notice to Mr. Baquerizo's about Plaintiff's military duties.

14.     Upon reviewing the schedule and Plaintiff's time commitments, Mr. Baquerizo demanded to know when Plaintiff would be discharged from the Army. Mr. Baquerizo also inquired as to whether the project management team had had to previously "deal" with instances of Plaintiff's military duty leave, as necessitated by his military obligations.

15.     Upon disclosure of his protected status to Mr. Baquerizo, and despite the fact that Defendant had long been aware of it, Plaintiff immediately experienced adverse and disparate treatment as compared to similarly situated non-military individuals.

16.     At this same meeting, Plaintiff requested to continue working remotely, in accordance with Defendant's policy for allowing remote work enacted in response to the COVID-19 pandemic, as

Plaintiff's son was ready to come home from the neonatal intensive care unit where he had resided for more than six weeks.

17.     Mr. Baquerizo denied this request and informed the Plaintiff that he would have to work full-time in office. Mr. Baquerizo further stated that Plaintiff could "be there" for his family by coming into the office and ensuring he continued to provide for them.

18.     In returning to the office full time, Plaintiff noticed that many similarly situated employees had not been required to return to the office and were instead coming in only as needed. In inquiring as to whether these employees had been notified of the change in policy, Plaintiff was informed that Mr. Baquerizo had not informed them of, or elected to enforce against them, the "changed" policy regarding remote work.

19.     Rather, it seemed that Mr. Baquerizo had only informed Plaintiff that he would be required to cease remote work and to begin working in office.

20.     Prior to and after Mr. Baquerizo's appointment, Plaintiff timely remitted schedules and orders setting out his expected duties for the year or upcoming months to the Defendant. While such duties were out of Plaintiff's control and would change from time to time, Plaintiff would timely provide Defendant with updates and amended schedules, as applicable and available.

21.     In or around April of 2021, Plaintiff met with Mr. Baquerizo for a scheduled meeting. During this meeting, Mr. Baquerizo expressed concern with Plaintiff's scheduled Joint Readiness Training Center ("JRTC") training from August 9, 2021, to September 5, 2021.

22.     In response, Plaintiff informed Mr. Baquerizo of his detailed coverage plan and intent to timely brief and involve other project managers to ensure that the projects would not suffer delays in any material way.

23.     In or around July of 2021, Plaintiff attended another scheduled meeting with Mr. Baquerizo. At this meeting, the two rediscussed the training schedule as well as Plaintiff's upcoming deployment in November 2021.

24.      While Congress at the time had yet to approve the budget necessary for JRTC training to continue as planned, Plaintiff informed Mr. Baquerizo that he would continue to work with other project managers to effectuate his coverage plan to avoid any inconvenience to the Defendant.

25.     On the morning of August 2, 2021, Plaintiff received notice that JRTC training would proceed as planned. Following the notice provided by Plaintiff months in advance, Plaintiff immediately called and texted Mr. Baquerizo informing him of such and reminding him that he had coordinated efforts with the other project managers regarding his projects to avoid last-minute project transfers and unpreparedness. Plaintiff then emailed Defendant's human resources representative with the dates and supporting documentation.

26.     Mr. Baquerizo did not voice any concerns on the phone or in responding to Plaintiff's text confirming receipt regarding the JRTC notice. Instead, Mr. Baquerizo emailed Plaintiff later that day complaining that Plaintiff's absence presented him difficulties given the alleged unknown finalization of date, lack of information and notice, and lack of coordination as to the scheduling of Plaintiff's projects. Mr. Baquerizo then demanded that in the future Plaintiff provide *more* notice.

27.     Following his return from JRTC training, in or around October of 2021, Mr. Baquerizo scheduled and conducted a meeting involving the entire department of project managers. Mr. Baquerizo stated that the meeting was to discuss the "elephant in the room."

28.     The "elephant" that Mr. Baquerizo was referring to was expressly identified as Plaintiff's military service and upcoming November 2021 deployment. Mr. Baquerizo stated that he "knew"

all the other project managers "wondered why" Defendant as a company "put up with" Plaintiff and why Defendant kept Plaintiff as an employee due to his military leave and scheduled training obligations, which he claimed negatively affected and inconvenienced everyone.

29.     Prior to Plaintiff's November 1 deployment, Plaintiff requested to take two weeks off in October as PTO so that he could spend time with his family prior to deployment. At all relevant times, Mr. Baquerizo's unwritten paid time off ("PTO") policy had been to approve PTO requests so long as your projects were covered by other employees while you were absent.

30.      Despite the fact that his projects had already been transferred and were in good standing, Mr. Baquerizo, in part, denied this request, allowing Plaintiff only six days of PTO. Such denial was arbitrary and without reasoning.

31.     On November 1, 2021, Plaintiff was deployed. Well in advance of this date, in or around August and September of 2021, Plaintiff transferred his projects to the project management team. Upon transferring, and until his deployment, Plaintiff participated in the day-to-day work associated with these and other projects without complaint.

32.     While deployed, Plaintiff sent Mr. Baquerizo several communications updating Plaintiff's status. Such emails included notifications to Mr. Baquerizo that Plaintiff was safe following an evacuation of his unit along with requests that Mr. Baquerizo share Plaintiff's safety status and regards with the other project managers.

33.     Upon information and belief, Mr. Baquerizo did not convey Plaintiff's regards to the other employees. Instead, in response to an employee's inquisition as to whether Mr. Baquerizo had heard from Plaintiff, Mr. Baquerizo stated that the only person likely to have heard from Plaintiff was the person processing his benefits, Barbara Perez.

34.     In fact, Mr. Baquerizo represented to Frank Fonseca, Senior Vice President, that Plaintiff never communicated with Mr. Baquerizo during his deployment.

35.     Despite Mr. Baquerizo's contentions, Plaintiff maintained contact with Defendant's HR representative, Shannon Price, and Mr. Baquerizo, therein, keeping them apprised of his military orders and estimated dates of return.

**C.   Following Plaintiff's Return from Active Duty, Defendant Intentionally Altered the Terms and Conditions of his Employment to Punish and/or Discriminate Against Plaintiff.**

36.     Plaintiff was discharged from active service on March 6, 2023, and returned to the office on March 16, 2023. Prior to his arrival, Plaintiff contacted Mr. Baquerizo and notified him that he was eager to return and assist the other project managers.

37.     Rather than assigning Plaintiff projects and allowing him to return to the duties and responsibilities he had prior to deployment, Mr. Baquerizo informed Plaintiff he would be participating in the "shadow program."

38.     It was never explained to Plaintiff what the shadow program was, or what his duties and obligations would be thereunder. Plaintiff could not otherwise discern what his duties and obligations were as he was the only individual "participating" in the shadow program. This caused Plaintiff to spend at or around six weeks without any assigned projects.

39.     On April 7, 2023, Plaintiff filled out a "Coaching Input Sheet," wherein he reflected on his time as an employee of Defendant and explained his goals for the future. In addition to recognizing that in 2021, prior to his deployment, he had managed $7,274,022.09 of billable work, Plaintiff identified his three immediate goals as: 1) working on his relationship with Mr. Baquerizo, 2) executing a transition plan following his return, and 3) getting assigned "[a]t least 1 [project], even if it is receiving 1 from another [project manager]."

40.     These goals demonstrate Plaintiff's good faith attempt to resolve the unrequited grievances Mr. Baquerizo had against him. In fact, Plaintiff also identified on this sheet that he aspired to be a part of Defendant's Florida senior leadership, thereby demonstrating his intent to remain a loyal employee of the Defendant for an extended period of time.

41.     Despite the efforts and comments of Defendant's agents and representatives, at all relevant times Plaintiff performed his job duties satisfactorily, if not in a superior manner.

42.     In April 2023, following this "coaching," Plaintiff was assigned his first project since his return from deployment and subsequent honorable discharge from active service. At the time, the other project managers provided Plaintiff with a fake "certificate" for "graduating" from the shadow program. Such actions demonstrate the mockery and/or ridicule that Plaintiff was intentionally subjected to by Defendant's agents.

43.     These events and treatment were unexpected by Plaintiff and marked a stark contrast to his previous return from deployment in 2017, wherein he received several project assignments and immediately resumed his duties and obligations, as he remained capable of doing upon return in 2023.

D. **Plaintiff was Activated by the Governor of Florida, Requiring Immediate Departure.**

44.     On August 27, 2023, Plaintiff received notice that he was activated by the Governor of Florida to assist in recovery efforts in response to Hurricane Idalia. The notice informed Plaintiff that he had a report time of 12:00 p.m. on August 28, 2023.

45.     Upon receiving notice, Plaintiff immediately contacted Mr. Baquerizo, as agent of Defendant, and informed him of the activation, thereby advising him 1) of his recommendations as to project coverage, and 2) that he would make himself as available as possible for phone calls. Plaintiff also notified the human resources department about the activation.

46.     Mr. Baquerizo did not respond to Plaintiff's communications until two days after Plaintiff initiated contact. Mr. Baquerizo's only response was "be safe."

47.     Plaintiff was on State Active Duty from August 28 to September 2, 2023. At the time he left, all his projects were in good standing.

E.  **Upon Returning from Duty, Plaintiff was Treated Disparately Due to his Military Status and Obligations.**

48.     Following Plaintiff's return from active duty on March 16, 2023, and Mr. Baquerizo's utterance of both negative and false statements in private and public settings during Plaintiff's required absence, Plaintiff was immediately greeted with hostility by Mr. Fonseca, Defendant's Senior Vice President. More specifically, Mr. Fonseca told Plaintiff that he did not want people working for Defendant who had acted the way Plaintiff did during his last deployment. Mr. Fonseca alleged that Plaintiff did not communicate with Defendant's representatives for a period of sixteen (16) months, while he was deployed on active duty.

49.     During this conversation, Plaintiff raised a discrepancy in his salary cost of living adjustment, which was provided every July. Mr. Fonseca dismissively responded that Plaintiff should be grateful for what he received as Defendant was not obligated to provide any increase whatsoever due to his deployment.

50.     Upon information and belief, Plaintiff received a salary adjustment at or around four times less than other similarly situated project managers. Furthermore, upon information and belief, Plaintiff received significantly less in bonuses as compared to other non-military employees, including those who had worked for the company for less time than Plaintiff.

51.     After meeting with Mr. Fonseca, Plaintiff spoke with Mr. Baquerizo and thanked him for the differential pay benefit that he was provided. Mr. Baquerizo responded that Defendant offered the differential pay, not Mr. Baquerizo, and that Plaintiff's election to accept the pay had negatively

impacted the office's numbers during Plaintiff's deployment. Mr. Baquerizo then informed Plaintiff that it was important that he understand his alleged continued negative impact on the office generally due to his presence.

52.    Plaintiff then explained his concerns regarding the cost-of-living adjustment discrepancy raised with Mr. Fonseca, and Mr. Baquerizo reaffirmed that Plaintiff would not receive an equal adjustment to that of his counterparts and that he should feel "lucky" to have received anything at all. This conversation concluded with Mr. Baquerizo demanding once again to know when Plaintiff's military service obligations would conclude.

53.    Following repeated acts of discrimination against Plaintiff, as described herein, Plaintiff scheduled a meeting with Mr. Baquerizo and discussed with him the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the fact that its purpose was to protect the civilian employment rights of individuals who serve or have served in the uniformed services.

54.    Following this meeting, Plaintiff emailed Mr. Baquerizo a summary of his concerns and provided him with the relevant USERRA informational materials. Plaintiff requested that Mr. Baquerizo forward his concerns and the information to a human resources representative. Mr. Baquerizo represented to Plaintiff on October 10, 2023, that he had done so and that he would receive a response from human resources within a week.

55.    Approximately a month after this meeting, Shannon Price, a human resource representative for Defendant, contacted Plaintiff. Ms. Price informed Plaintiff that his salary was within the range for Miami project managers but that she would not discuss the specifics of other employee salary increases or bonuses.

56.     On November 6, 2023, Plaintiff informed Ms. Price that he intended to file an official USERRA inquiry through the Department of Labor. Defendant's response was that they were "hoping" he would not decide to do that.

**F. Defendant Unlawfully Terminates Plaintiff for Taking Advantage of the Rights and Protections Afforded by USERRA.**

57.     The following day, November 7, 2023, Mr. Baquerizo texted Plaintiff at 7:20 a.m. to come to his office at 1:30 p.m. Upon arriving, Plaintiff was met by Mr. Baquerizo and Defendant's corporate compliance counsel.

58.     During this meeting, Plaintiff was notified that he was being terminated because he was no longer a "cultural fit" for the office.

59.     Defendant's counsel then provided Plaintiff with a termination letter and severance packet and informed him that he was required to sign the documents immediately to acknowledge receipt of the termination letter and severance packet.

60.     Instead of doing so, and to Mr. Baquerizo's dismay, Plaintiff read the terms aloud and refused to sign the agreement as it was not what was Defendant's agents represented it to be.

61.     Defendant's reasoning for Plaintiff's termination was pretextual as Defendant sought to terminate Plaintiff due to his military commitments and to punish Plaintiff for attempting to take advantage of the rights and protections afforded by USERRA.

62.     In summary, Defendant discriminated against Plaintiff based on his military service and by treating him adversely and in a manner materially different to the manner in which it treated similarly situated employees.

<u>**CLAIMS FOR RELIEF**</u>

<u>**FIRST CLAIM FOR RELIEF**</u>
**(Intentional Discrimination in Violation of 38 U.S.C. § 4311(a))**

63. Plaintiff hereby incorporates by reference all the allegations set forth in the preceding paragraphs, as if fully set forth herein, and further alleges as follows.

64. At all relevant times alleged herein, Plaintiff was a member of the uniformed services who held civilian employment as a project manager for Defendant. Plaintiff retained such status at the time Defendant engaged in adverse employment actions against the Plaintiff. Such actions include, without limitation 1) denying Plaintiff the benefits of employment made available to other similarly situated non-military employees, which includes equal compensation, bonuses, salary and bonus increases, and the assignment of meaningful obligations, duties, and responsibilities; and 2) terminating Plaintiff's employment with the Defendant. Such adverse employment actions negatively impacted the terms, conditions, and privileges of Plaintiff's employment with Defendant.

65. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3).

66. Pursuant to 38 U.S.C. § 4311, Defendant was under a duty to refrain from engaging in conduct that violated Plaintiff's rights and protections under USERRA. Such violations of Plaintiff's rights and protections included, without limitation, failing to 1) minimize or eliminate the disadvantages to Plaintiff's career and employment which result from his military service, and 2) not discriminate or retaliate against Plaintiff because of his military service.

67. Defendant breached these duties by wrongfully and unlawfully denying Plaintiff retention in employment, instead electing to terminate Plaintiff because of his military obligations in violation of 38 U.S.C. § 4311(a). Such termination violates the express mandate and purpose of USERRA, as explicated in 38 U.S.C. § 4301(a). Defendant further breached its duties by

wrongfully and unlawfully denying Plaintiff the benefits of employment made available to similarly situated, non-military, employees, in violation of 38 U.S.C. § 4301(a).

68.     More generally, Defendant wrongfully and unlawfully breached its duties by 1) refusing to provide Plaintiff with work and projects, instead subjecting him to ridicule and forcing him to participate in a "shadow program" for which his duties and obligations were never defined—negatively effecting his potential for bonuses, awards, or other forms of compensation; 2) treating Plaintiff disparately and speaking of him adversely in front of other employees, due to his military obligations and the alleged inconveniences such obligations caused; and 3) altering the terms and conditions of Plaintiff's employment generally, including Plaintiff's pay, in an unfavorable and inequitable manner.

69.     Should the Defendant be required to truthfully list the factors involved in the adverse employment actions perpetrated against the Plaintiff, it is Plaintiff's position that Defendant would have to identify as a motivating factor, if not the sole factor, Plaintiff's military membership and service. Such discriminatory motivation can be inferred by 1) the temporal proximity between Plaintiff's military activity and the adverse employment actions taken; 2) Defendant's express citation to Plaintiff's military status and obligation as the reasoning for adverse employment action and treatment; 3) the reasoning for the adverse employment actions proffered by the Defendant, which was inconsistent with the other actions and express statements of Defendant, including, without limitation, Defendant's more favorable treatment of non-military employees; 4) the continued hostile treatment of Plaintiff in public and private settings, both in and out of the presence of Plaintiff and other employees, which was premised upon Plaintiff's military status and obligations; and 5) the more favorable treatment generally afforded to other non-military employees by Defendant, including, without limitation, increased salaries, bonuses, roles,

responsibilities, duties, and obligations, while subjecting only Plaintiff to the "Shadow Program" and limited pay increases and bonuses, if any.

70.    Defendant's termination of Plaintiff and other violations of 38 U.S.C. § 4311 was willful within the meaning of 38 U.S.C. § 4323(d)(1)(C) as Plaintiff's military service obligations was the substantial, if not the sole, factor motivating Defendant's actions. Such is demonstrated, in part, by Defendant's decision to terminate the Plaintiff immediately following his provision of USERRA materials to the Defendant and good faith notice of his intent to file an initial inquiry through the Department of Labor.

71.    Upon information and belief, an additional substantial and/or motivating factor of Plaintiff's termination was due to Plaintiff's intent to take advantage of those rights and protections conveyed to him by USERRA as a uniformed service member.  Such constitutes a violation of 38 U.S.C. § 4301(b).

72.    Defendant's unlawful and willful denial of Plaintiff's retention of employment, in addition to Defendant's failure to provide any benefit of employment, due to the Plaintiff's continuing obligation to perform service in a uniformed service occurred in violation of 38 U.S.C. § 4311(a).

73.    As a direct and proximate result of Defendant's willful conduct, as set forth in this pleading, Plaintiff has suffered, without limitation, the following losses: 1) employment, 2) past, present, and future wage compensation, 3) past, present, and future fringe benefits, 4) medical and disability insurance, 5) pension, retirement, vacation, sick leave, life insurance, long term and short term disability, and profit-sharing benefits, and the 6) opportunity for future advancement to higher positions and the like.

74.    As the breaches alleged herein were willful, Plaintiff is seeking liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C).

75.     Defendant's actions have caused Ms. McSwain damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Intentional Discrimination in Violation of 38 U.S.C. § 4311(b))**

76.     Plaintiff hereby incorporates by reference all the allegations set forth in the preceding paragraphs, as if fully set forth herein, and further alleges as follows.

77.     Pursuant to 38 U.S.C. §4311(b), "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter . . . or (4) has exercised a right provided for in this chapter."

78.     In or around the beginning of October, Plaintiff scheduled a meeting with his supervisor, Mr. Baquerizo, to discuss the protections afforded to him by USERRA as well as Defendant's obligations under USERRA as an employer. Following this meeting, Plaintiff in good faith emailed Mr. Baquerizo a summary of his concerns, therein providing publicly available USERRA informational materials so that Defendant could inform itself.

79.     Following Defendant's untimely response to Plaintiff's concerns, which itself is evidence of its malice and bad intent, Defendant informed Plaintiff that it would not rectify or address the concerns or violations raised by the Plaintiff.

80.     After it appeared that Plaintiff's diligent efforts to amicably raise concerns regarding Defendant's violations of Plaintiff's USERRA rights and protections had failed, Plaintiff informed Defendant on November 6, 2023, that he would be moving forward with an official USERRA inquiry through the Department of Labor.

81.     Defendant's response was that they were "hoping" he would not decide to do that.

82.     The following morning, Plaintiff was instructed to go to Mr. Baquerizo's office, wherein his employment with Defendant was immediately terminated, and Defendant's counsel had already

drafted a termination agreement. Such action, taken in response to Plaintiff taking of action to enforce protections afforded to him, and exercise of rights afforded to him, constitutes a violation of 38 U.S.C. §4311(b).

83.     The reasoning for Plaintiff's termination, as provided by Mr. Baquerizo in presence of his counsel, is pretextual as Plaintiff had, at a minimum, satisfactorily, performed the duties and obligations required by his position on a consistent and ongoing basis.

84.     These facts demonstrate an intention to retaliate against Plaintiff for seeking to enforce or invoke his rights and protections under USERRA.

85.     Defendant knowingly and intentionally discriminated against Plaintiff because of his military service in violation of USERRA, 38 U.S.C. § 4301, *et seq*. Such willful action constitutes a violation of Defendant's duties under USERRA, and has directly and proximately caused Plaintiff to suffer the following losses:   1) employment, 2) past, present, and future wage compensation, 3) past, present, and future fringe benefits, 4) medical and disability insurance, 5) pension, retirement, vacation, sick leave, life insurance, long term and short term disability, and profit-sharing benefits, and the 6) opportunity for future advancement to higher positions and the like.

86.     Due to Defendant's willful and knowing violation of USERRA, Plaintiff is entitled to liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C).Defendant's actions have caused Plaintiff damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**(Violation of 38 U.S.C. § 4316)**

87.     Plaintiff hereby incorporates by reference all the allegations set forth in the preceding paragraphs, as if fully set forth herein, and further alleges as follows.

88.     Pursuant to 38 U.S.C. § 4316(a) and (b), individuals who are reemployed and returning from absence of position by reason of service in the uniformed services are entitled to 1) rights and benefits determined by seniority; 2) additional seniority, rights, and benefits that such person would have attained if the person had remained continuously employed; and 3) such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay.

89.     Generally, such provisions entitle a person who is reemployed to seniority and other "rights and benefits," including any advantages, profits, privileges, gains, status, accounts, interests such as wages or salary for work performed, and bonuses, vacations, supplemental benefits, etc., as afforded to other continuously employed individuals.

90.     Following reemployment, an employer is prohibited from discharging an individual from employment except for cause "within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days." 38 U.S.C. § 4316(c).

91.     As is relevant here, Plaintiff 1) gave advance written and verbal notice of his service and service obligations to Defendant, his "employer" under USERRA; and 2) did not have a cumulative length of absence in excess of five years by reason of service.

92.     Despite the fact that Defendant's circumstances did not change during Plaintiff's deployment as to make reemployment impossible or unreasonable, Defendant terminated Plaintiff shortly after his return from active service, within one year of reemployment, in violation of its duties of reemployment under 28 U.S.C. § 4316.

93.     Such termination was preceded by Defendant's failure to provide Plaintiff with the rights and benefits he was entitled to under USERRA. As alleged herein, Defendant willfully and unlawfully withheld rights and benefits from the Plaintiff, due to his military required absence

from his position with Defendant, including, without limitation, seniority, advantages, profits, privileges, gains, accounts (projects), increased wages or bonuses for work performed, and vacations.

94.     Absent cause, Plaintiff was entitled to reemployment with Defendant upon his return from active duty pursuant to 38 U.S.C. § 4312. More specifically, Plaintiff was entitled to return to his position and status with Defendant, and to be afforded those rights and benefits he would have attained if he remained continuously employed. Instead, Defendant refused to adhere to law and denied Plaintiff such rights and benefits, while at the same time extending them to other non-military employees due to their non-military status and lack of required absence.

95.     The reason offered by Defendant as justification for Plaintiff's termination is pretextual and arbitrary, insufficient to constitute legitimate cause as required by 38 U.S.C. § 4316. Instead, Defendant's motivation for termination of Plaintiff as opposed to maintaining his reemployment was due to Plaintiff's prior and future military obligations.

96.     Defendant's actions were both discriminatory and retaliatory, in that they were aimed at punishing Plaintiff for his military status and for seeking to avail himself of the protections afforded by USERRA.

97.     Such willful action constitutes a violation of Defendant's duties under USERRA, and has directly and proximately caused Plaintiff to suffer the following losses: 1) employment, 2) past, present, and future wage compensation, 3) past, present, and future fringe benefits, 4) medical and disability insurance, 5) pension, retirement, vacation, sick leave, life insurance, long term and short term disability, and profit-sharing benefits, and the 6) opportunity for future advancement to higher positions and the like.

98.     As the breaches alleged herein were willful, Plaintiff is seeking liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C).

Defendant's actions have caused damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Violation of 38 U.S.C. § 4302)

99.     Plaintiff hereby incorporates by reference all the allegations set forth in the preceding paragraphs, as if fully set forth herein, and further alleges as follows.

100.    The USERRA makes clear that its provisions trump any state law or company policy that in any way limits the protections USERRA provides.

101.    The USERRA makes clear that an employee does not need to provide orders to his or her employer before leaving work to serve in the military. The USERRA regulations provide that the military leave "notice may be informal and does not need to follow any particular format." 20 C.F.R. §1002.85(c)&(d). At times "[i]t may be impossible or unreasonable to give advance notice under certain circumstances. Such circumstances may include…a requirement that the employee report for uniformed service in an extremely short period of time." 20 C.F.R. §1002.86(b).

102.    Plaintiff provided sufficient notice of their military duties prior to their absence, however Defendant has refused to acknowledge these attempts to provide notice.

103.    To the extent that Defendant alleges application of any agreement that constitutes any limitation on Plaintiff's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. § 4302.

104.    Defendant's actions and inactions have caused damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant, and award all relief as allowed by law, including, but not limited to:

a.      Compensatory damages pursuant to 38 U.S.C. § 4323(d)(1)(B) for Plaintiff's loss of 1) employment, 2) past, present, and future wage compensation, 3) past, present, and future fringe benefits, 4) medical and disability insurance, 5) pension, retirement, vacation, sick leave, life insurance, long term and short term disability, and profit-sharing benefits, 6) opportunity for future advancement to higher positions and the like; plus interest;

b.      Liquidated damages pursuant to 38 US.C. § 4323(d)(1)(C) for Defendant's willful failure to comply with the provisions of USERRA;

c.      Statutory damages allowed to the fullest extent;

d.      Pre-judgment and post-judgment interest on all damages;

e.      Attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2), and

f.      Such other relief as the Court may deem appropriate

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this case.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this Friday, September 13, 2024, a true and correct copy of the foregoing was furnished to all parties via the Court's electronic service system to all counsel of record.

Dated: September 13, 2024          Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
1826 Ponce De Leon Blvd
Coral Gables, FL 33134
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiff*

By: __/s/ Ryan Clancy__

Ryan Clancy Esq.
*Counsel for Plaintiff*
Florida Bar No. 117650
Email: ryan@business-esq.com
Email: ryan@business-esq.com